```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

DONNA S. TRUSSELL,              )
                                )
          Plaintiff,            )
                                )
v.                              )    Case No. CIV-16-502-JHP-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
          Defendant.            )
```

## REPORT AND RECOMMENDATION

Plaintiff Donna S. Trussell ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's applications for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 57 years old at the time of the ALJ's decision. Claimant completed her high school education and attended cosmetology school. Claimant has worked in the past as a supervisor of production in a factory. Claimant alleges an inability to work beginning March 5, 2012 due to limitations caused by degenerative arthritis, diabetes, neuropathy, depression, short-term memory loss, high blood pressure, and the partial colon removal which brought about bowel problems.

**Procedural History**

On May 9, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 6, 2015, Administrative Law Judge ("ALJ") Jeffrey S. Wolfe conducted a hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. By decision dated July 22, 2015, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's requests for benefits. On September 26, 2016, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet or equal a listing and retained the residual functional capacity ("RFC") to perform her past relevant work. At step five, the ALJ found Claimant could perform sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's credibility; and (2) failing to reach

a proper RFC supported by substantial evidence.[2]

## Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease at L4-5, peripheral neuropathy of the bilateral legs, and irritable bowel syndrome. (Tr. 12). After consultation with a vocational expert, the ALJ concluded Claimant retained the RFC to perform her past relevant work as a supervisor. (Tr. 18). In determining Claimant's RFC, the ALJ found she could lift/carry 20 pounds occasionally and ten pounds frequently; stand/walk four hours in an eight hour workday; and sit for six hours in an eight hour workday. The ALJ determined Claimant could balance and crawl frequently, but could only occasionally bend, stoop, kneel, and crouch. (Tr. 14). As a result, the ALJ determined Claimant was not disabled from March 5, 2012 through the date of the decision. (Tr. 19).

Claimant contends the ALJ failed to properly evaluate her credibility. Claimant testified that she was being treated for diabetes type II and that she had experienced neuropathy in her feet with sharp pains that shoot through them. She also had arthritis in her wrists which bothered her. She experienced these issues for the preceding six or seven years. (Tr. 47).

---

[2] Claimant states in her opening brief that she alleges "three (3) issues for remand/reversal." The actual briefed issues include only these to identified issues of alleged errors. *See* Plaintiff's Appeal Brief, Docket Entry #18, p. 9.

Claimant took Hydrocodone for her back pain. (Tr. 48-49). She took the medication as she needed it. Claimant also took medication for her stomach, which caused her pain. She stated that she had to use the bathroom a lot. She had bowel movements about eight times a day. (Tr. 49-50). She took four Imodium A-D pills prior to the hearing. Claimant did not take this medication often "[b]ecause [she] take[s] too much medicine now." She usually took it if she had to go somewhere. (Tr. 50).

Claimant did not grocery shop because she could not do all of the walking. Her husband usually did the shopping. She only left the house to go to the doctor. (Tr. 50-51).

Claimant stopped working because of her back and her frequent bowel movements. (Tr. 51). Claimant testified that she did not do housework and made her own meals only to the extent she made a sandwich and soup. She did not do the dishes because it hurts her back to stand up and do them. (Tr. 51-52).

Claimant stated that she had carpal tunnel release surgery on both of her hands 15 to 20 years before the hearing which left her with no strength in her hands. (Tr. 52). She also stated that she had arthritis in her hands, causing them to swell. (Tr. 53).

Claimant also testified that she had bowel movement accidents at least once a week at home and once in public. (Tr. 53). She stated the condition "just hits and sometimes I can't make it."

(Tr. 54).

Claimant also testified that she had traveled to Perryville, Arkansas six or seven times in a two and a half hour trip with her husband driving. (Tr. 38-39). She had also flown to Oregon once. (Tr. 39). She did not belong to any organizations and did not attend church in ten years. (Tr. 40). Claimant used to garden but had not done so in the preceding four years. Her only stated hobbies were reading and watching TV. (Tr. 41).

Claimant last worked as a supervisor running two production lines. (Tr. 41). The lines produced graham crackers and animal cookies. Claimant supervised about 40 people. She worked for the company for 30 years. (Tr. 42). She quit work after taking medical leave when she had surgery. (Tr. 43). Claimant sees a doctor about every three months. She has not been to the emergency room since 2013 or been hospitalized since 2012. (Tr. 44).

The objective medical evidence indicates Claimant suffered from diverticulitis. For this condition, she underwent a laparoscopic sigmoidectomy with a reanastomosis on March 5, 2012. The anastomosis failed the following day causing Claimant to receive an ileostomy and colostomy. (Tr. 603). In a visit on May 16, 2012, Claimant reported that her pain was reasonably controlled by medication, she was ambulatory, had good ostomy output, and walked around her neighborhood without difficulties. Her weight

was reasonably constant and she was eating well. (Tr. 607).

In August of 2012, Claimant suffered from complications from the surgery, developing intradominal sepsis secondary to reanastomosis dehiscence. Exploratory surgery resulted in bowel ressection and ostomy placement, and ostomy takedown/reanastomosis. (Tr. 757).

Claimant was evaluated by consultative physician Dr. Jimmie W. Taylor in July of 2013. Dr. Taylor found Claimant had essentially full range of motion with no significant tenderness to palpation of her back. Her grip strength and dexterity were normal. (Tr. 671). She also had a safe and stable gait with no assistive devices. Her heel, toe, and tandem walks were within normal limits. Dr. Taylor noted Claimant's diagnoses as diabetes mellitus, hyperlipidemia, frequent stools (eight per day), history of diverticulitis, hypertension, peripheral neuropathy, hypothyroidism, depression, insomnia, cardiac dysrhythmia/tachycardia, gastroesophageal reflux disease, chronic pain, degenerative joint disease of the low back, and degenerative joint disease of the knees. (Tr. 672).

On September 4, 2013, Claimant was attended by Dr. Nancy Merritt, her primary care physician. Dr. Merritt found Claimant had normal range of motion, strength, and tone; mild thoracic pain on palpation with mild limited range of motion. (Tr. 775). An MRI performed during this same month indicated no evidence of

compression fracture, mild annular disc bulging from T8-9 through T10-11, and osseous endplate spurring in the thoracic spine. (Tr. 708).

On May 14, 2015, Dr. John Rice performed a consultative examination of Claimant. After reviewing x-rays, Dr. Rice found minimal to moderate degenerative disc disease at L4-5. He also noted very moderate narrowing of the medial compartment of the left knee with all other findings within normal limits. On the right knee, Dr. Rice found medial compartment space narrowing by approximately 60%. Overall, Dr. Rice concluded Claimant had mild to moderate osteoarthritic changes in the medial compartment. (Tr. 821).

On May 27, 2015, Claimant was evaluated by Dr. Michael Karathanos. A motor examination revealed no weakness in the upper or lower extremities, equal grip strength, no involuntary movements, tremors, atrophy, or fasciculations. Claimant's gait was stable and her tandem gait was slightly impaired, but she could walk on heels and toes. Vibratory sensation was absent at the toes but preserved at the ankles. She had negative straight leg raising. Lumbosacral spine flexion was about 60 degrees, extension was 20 degrees, and lateral bending and rotation were preserved. Dr. Karathanos assessed Claimant with mild to moderate diffuse sensorimotor polyneuropathy, probably diabetic in origin;

degenerative thoracic spine disease with mild disc bulging at T8 through T11; history of restless leg syndrome; persistent diarrhea of unknown etiology; and history of diabetes mellitus, hypertension, and hypercholesterolemia. (Tr. 831).

Dr. Karathanos also provided a medical source statement dated May 27, 2015. He opined Claimant could occasionally lift/carry up to ten pounds; sit for two hours at a time and six hours in an eight hour workday; stand for 30 minutes at a time and for one hour in an eight hour workday; walk for 30-45 minutes in an eight hour workday; she did not need an assistive device; she could occasionally reach, handle, finger, and feel and could push/pull with her left hand. Claimant was also found to be able to operate foot controls occasionally bilaterally; never climb ladders or scaffolds, crouch or crawl and only rarely stoop; and never operate in unprotected heights, humidity and wetness, extreme cold, or with vibrations. Claimant was determined to be able to engage in shopping, travel, ambulation, walking a block, taking standard public transportation, climb a few steps, prepare a simple meal and feed herself, care for personal hygiene, and sort, handle, and use papers/files. (Tr. 832-37).

On July 9, 2013, Dr. Theresa Horton determined Claimant's depression was recurrent but mild. Claimant also exhibited a mild cognitive impairment. Dr. Horton concluded Claimant appeared

10

capable of understanding, remembering, and managing most simple and complex instructions and tasks with adequate social/emotional adjustment into occupational and social settings. (Tr. 663-66).

On May 21, 2015, Dr. Ashok Kache performed a motor nerve study and concluded that there was no evidence of entrapment syndromes or neuropathy in both upper extremities. Peripheral neuropathy was noted in her legs. She showed no acute denervation in the arm or leg muscles. (Tr. 828).

Reviewing consultative physicians Dr. Charles Clayton and Dr. Karen Schnute both indicated Claimant retained the physical ability to perform work at the light exertional level. (Tr. 73-74; 84-86).

On the issue of Claimant's credibility, the ALJ found Claimant's statements regarding the intensity, persistence, and limiting effects of her conditions were not entirely credible. (Tr. 17). He determined that no treating or examining source had provided the rationale for a finding of total disability. The ALJ recited much of the medical record that this Court has done herein above. He noted Claimant did not take any prescription medication for her bowel problems. He also found that her treating sources, in particular Dr. Merritt, did not prominently present Claimant's bowel issues as significant. He stated in the decision that Claimant's counsel's statements of daily bowel accidents did not coincide with Claimant's testimony of "once per week" accidents.

(Tr. 17-18).

The ALJ also rejected Claimant's assertions of debilitating weakness or numbness in her hands from neuropathy since the medical source evidence showed full range of motion. (Tr. 17). The motor nerve study by Dr. Kache also found no peripheral neuropathy in Claimant's upper extremities. (Tr. 828). Range of motion testing by Dr. Taylor also revealed essentially full range of motion and Dr. Merritt found only mild limitations in the thoracic spine. (Tr. 17).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.  The ALJ's credibility findings are well-supported by the medical evidence in the record.  The objective medical evidence from both treating and consultative sources supported the ALJ's finding that Claimant's testimony of limitation was not entirely credible.  No error is found in the ALJ's credibility findings.

## RFC Determination

In a similar vein, Claimant also challenges the ALJ's RFC findings.  She merely argues that the RFC limiting Claimant to sedentary work was not supported by the medical evidence without further expansion of the argument.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001).  A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p.  The ALJ

13

must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. This Court has recited the relevant medical evidence which supports the ALJ's RFC. Indeed, two of the consultative reviewing physicians found Claimant could perform at the light exertional level. Further, the ALJ ascertained from the vocational expert that Claimant's past relevant work as a supervisor was performed at the sedentary work level. (Tr. 59). As a result, it was entirely appropriate and well-supported for the ALJ to conclude that Claimant could perform her past relevant work under the RFC which he determined.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore,

14

the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED.**

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of February, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE